**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DUANE KOCH and
   PATRIOT METAL PRODUCTS, INC.,

    Plaintiffs,

       v.

MARTIN KOCH and
   K-FAB, INC.,

    Defendants.

CIVIL ACTION NO. 3:16-CV-37

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me are Defendants Martin Koch and K-Fab, Inc.,'s[1] (collectively "Defendants") Motion to Dismiss and Compel Arbitration (Doc. 14) and Plaintiffs Duane Koch and Patriot Metal Products's (collectively "Plaintiffs") Motion for Leave to Conduct Limited Expedited Discovery (Doc. 16).[2] The allegations in Plaintiffs' eleven (11) count complaint arise out of family business dealings gone awry. (Doc.1) Plaintiffs assert the following claims against Martin Koch: Count I, violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*; Count II, conversion of business information; Count III, invasion of privacy; Count IV, breach of fiduciary duties; Count V, a request for a Declaratory Judgment pursuant to 28 U.S.C. § 2201; Count VI, breach of contract;  Count VII, breach of settlement agreement; Count VIII, unjust enrichment; Count IX, a request for

---

[1]

    K-Fab, Inc. was listed as a nominal defendant by Plaintiffs. All eleven claims name Martin Koch individually; however, the operation,  control and ownership of K-Fab is central to the parties' disputes.

[2]

    On January 27, 2016, Plaintiffs filed a Motion for Appointment of a Receiver, or in the Alternative, Appointment of Custodian (Doc. 7) and a Petition to Enforce Settlement Agreement (Doc. 9). Plaintiffs also sought an expedited hearing on both the motion to appoint a receiver or custodian and the request for enforcement of the settlement agreement. (Docs. 7, 9) On February 12, 2016, following a conference with counsel, I issued a memorandum order denying, without prejudice, Plaintiffs' request for an expedited hearing on the matters. (Doc. 15) The requests to appoint a receiver or custodian and for enforcement of the settlement agreement remain outstanding.

equitable relief; Count X, a request for an equitable accounting; and Count XI, for appointment of a receiver/custodian. (Doc. 1) Currently, I am asked to consider whether the parties should be compelled to arbitrate their disputes and also whether Plaintiffs should be permitted to conduct limited discovery before the time frame prescribed by the Federal Rules of Civil Procedure.   Because I cannot assess Defendants' motion to compel arbitration based on the current evidentiary record, Defendants' motion will be denied without prejudice. Additionally, because Plaintiffs have failed to demonstrate good cause for why leave to conduct expedited discovery should be granted, I will deny the motion.

## I. Background

The following factual background is taken from the complaint. (*Complaint "Compl."*, Doc.1)

Duane Koch (hereinafter "Duane") and his father, Martin, or Marty, Koch (hereinafter "Marty") jointly owned K-Fab. (*Compl.* at ¶ 1.) In 2008, Marty owned seventy-six (76) percent and Duane owned twenty-four (24) percent. (*Id.* at ¶ 13.)  K-Fab is a sole source steel manufacturer located in Berwick, Pennsylvania, and has been in business since 1969. (*Id.* at ¶ 9.) K-Fab performs all aspects of steel manufacturing, including material processing, fabrication, machining, assembly and painting and services various sectors of the manufacturing industry. (*Id.*  at ¶ 11.)

Marty operated K-Fab until 2008, at which time operations were turned over to his son, Duane because Marty's wife was ill. (*Id.*  at ¶ 12.) In  2012, pursuant to a stock transfer agreement between Marty and K-Fab ("Agreement"), Duane agreed to buy Marty's share of K-Fab and assume sole ownership.  (*Id.* at ¶ 14.) K-Fab and Marty also entered into an agreement whereby K-Fab would lease from Marty the commercial premises and industrial/business facilities located at 1411 and 1408 Vine Street, in Berwick, Pennsylvania. (*Id.*  at ¶ 15.) The rent would be thirty thousand dollars ($ 30,000) per month for a seven (7) year period, beginning on January 1, 2013 and continuing through December 31, 2019. (*Id.*) K-Fab and M2d Realty Holdings, a holding company owned primarily by Marty but of which Duane is a minority owner, entered into an additional agreement to lease similar

facilities located at 2100 Dickinson Street, in Berwick, Pennsylvania for ten thousand dollars ($ 10,000) per month for the same seven (7) year period. (*Id.* at ¶ 16.)

On December 19, 2012, Marty agreed to sell all of his K-Fab stock for $ 6,036,058.00 ("Sales Price"). (*Id.* at ¶ 18.) K-Fab and Marty entered into an Installment Note with a Confession of Judgment ("Installment Note"), reflecting that one-half of the Sales Price was to be paid to Marty through owner-financing; comprised of a total of eighty-four (84) consecutive monthly payments of $ 42,656.55 at an annual interest rate of five (5) percent. (*Id.* at ¶¶ 18-19.) The first payment was scheduled for January 18, 2013. (*Id.* at ¶ 19.) The Installment Note provides that the failure of "[Marty] to receive any installment of principal or interest provided hereunder on or before thirty (30) days following the due date there of shall be a default hereunder."  (*Id.* at ¶ 34.)

The other half of the Sales Price was to be paid through a loan from First Keystone Community Bank ("FKCB"). (*Id.* at ¶ 21.) FKCB financed an amount of $ 4,500,000.00 ("Bank Loan") and, pursuant to a loan agreement dated December 19, 2012 between K-Fab, Duane and Marty ("Loan Agreement"), $ 3,018,029.00 was earmarked to cover the remaining half of the Sales Price. (*Id.* at ¶ 22.) K-Fab was to pay the Bank Loan and was also to make monthly payments on the Installment Note by placing the amount due in escrow. (*Id.* at ¶¶ 23-25.) Marty was to receive the escrowed funds quarterly, provided that K-Fab fulfilled its obligations under the Bank Loan, and Marty agreed that the monthly deposit in the escrow account constituted payment under the Installment Note so long as the escrowed amounts were released to him at the end of every quarter. (*Id.* at ¶¶ 27-28.)

The occurrence of the following events constitute default under the Installment Note: (1) any default by K-Fab with respect to the Bank Loan (regardless of whether FKCB elected to declare a default); (2) the refusal of FKCB to release escrowed payments on the Installment Note; or (3) a failure of K-Fab to pay any of its outstanding obligations when due.  (*Id.* at ¶¶ 28-29.) In the event of a default, Marty was permitted to accelerate the balance due under the Installment Note and to pursue any and all remedies available under the Loan Agreement and Pennsylvania law.  (*Id.* at ¶ 28.) Further, the Loan Agreement

3

provides that:

> [i]n addition to other rights and remedies available to Marty in the event of a default by K-Fab and Duane hereunder, Marty shall have the right to assume control of the operations of K-Fab and to take any and all measures that Marty deems appropriate to secure the payment of the Bank Loan and payment of the K-Fab Note. Marty shall incur no liability to Duane in connection with his assumption of control, unless his actions are taken in bad faith.

(*Id.* at ¶ 30.) When the Loan Agreement was signed, Duane was required to collaterally assign Marty his shares of K-Fab stock as security for payment of the K-Fab Note and performance by K-Fab of its obligations under the Loan Agreement. (*Id.* at ¶ 31.) Duane also signed an "Irrevocable Stock Power" assigning his shares of K-Fab stock as collateral for the K-Fab Loan. (*Id.* at ¶ 31.)

Around the time the agreements were made, Marty received the initial payment of $ 3,018,029.00 from the FKCB loan, and ceased his involvement in the company; relocating to Reno, Nevada. (*Id.* at ¶¶ 35-36.) Afterwards, K-Fab, through Duane, would place the monthly payment into escrow with instructions to pay Marty according to the terms of the Loan Agreement and Marty was paid quarterly payments of $ 127, 969.65. (*Id.* at ¶¶ 36-37.)

Marty continued to reside in Reno, Nevada, until a "new" mom came into the picture and Marty and his attorney came up with a plan to get K-Fab back, even after the Sales Price was already substantially paid. (*Id.* at ¶ 38.) Marty advanced his plan after he learned that K-Fab had acquired approximately thirty six million dollars ($ 36,000,000.00) in contracts for 2016. (*Id.* at ¶ 39.) Marty also requested that FKCB conduct a "sham" audit of K-Fab. (*Id.* at ¶ 40.) During the same time frame, around November 2015, Marty requested that Duane and K-Fab buy out the rest of the payments owed to him, extricate Marty from certain guarantees and extend the property leases between K-Fab and Marty.

4

(*Id.* at ¶ 41.) Duane and K-Fab agreed and obtained the appropriate financing.  (*Id.* at ¶ 42.) Marty then reneged on the agreement.  (*Id.* at ¶ 43.) On December 14, 2015, Marty, alleging that he was entitled to take over all of the stock owned by Duane, and accompanied by armed guards and his attorney, took control of K-Fab by way of the Irrevocable Stock Power and under the terms of the Loan Agreement.  (*Id.*)

As of December 14, 2015, Marty had received half of the Sales price, or $ 3,018, 029.00, and K-Fab had made approximately thirty-five monthly payments totaling $ 1,492,979.25 (including interest) under the Installment Note. (*Id.* at ¶ 44.) Marty had received approximately four million, one hundred thousand dollars ($ 4,100,000.00) towards the Sale Price. (*Id.* at ¶ 45.)  There was no allegation of default by Duane.  (*Id.* at ¶ 44.)

On December 14 and 15, 2015, Marty, without Patriot Metal's consent or knowledge, accessed the computer systems of Patriot Metal, an entity that is wholly owned by Duane, to elicit information related to Duane's business, including Patriot Metal's accounting software and personal interests. (*Id.* at ¶ 48; ¶ 50.) Duane and Patriot Metal stored confidential business information on the Patriot Metal computer systems. (*Id.* at ¶ 49.) Marty continued to access Patriot Metal's computers up to the date Plaintiff filed this action.  (*Id.* at ¶ 52.) Marty copied, with intent to use, the contents of Patriot Metal's computers, including Patriot Metal's information and confidential business and personal information created by Duane. (*Id.* at ¶ 53.) Marty's access to Patriot Metal's computer systems may have caused Marty to learn of K-Fab's multi-million dollar 2016 contracts. (*Id.* at ¶ 54.)

After December 14, 2015, Duane was informed by a mutual friend of Marty and Duane that Marty had been planning the actions he took for at least (18) months, all while accepting quarterly payments totaling approximately eight hundred thousand dollars ($800,000). (*Id.* at ¶¶ 46. 47.)

Plaintiffs filed a complaint on January 11, 2016. Plaintiffs allege that when Marty accessed Patriot Metal's computer systems he violated Section 1030 of the Computer

Fraud and Abuse Act, 18 U.S.C. §§ 1001, *et. seq.,* causing in excess of five thousand dollars ($ 5,000) in consequential damages and a loss in value in excess of five thousand dollars ($ 5,000) due to the information Marty obtained. (*Id.* at ¶¶ 55-67.) Duane seeks a declaratory judgment against Marty pursuant to 28 U.S.C. § 2201 regarding a determination of Duane's legal rights to control K-Fab, or, in the alternative, a declaration that Duane has not violated the terms of the Loan Agreement.  (*Id.* at ¶¶ 92-101.)  Plaintiffs also raise several claims under Pennsylvania law including: conversion of business information (*Id.* at ¶¶ 68-78.); invasion of privacy (*Id.* at ¶¶ 79-84.); breach of fiduciary duties (*Id.* at ¶¶ 85-91.); breach of contract (*Id.* at ¶¶ 102-110.); breach of settlement agreement (*Id.* at ¶¶ 111-119.); unjust enrichment (*Id.* at ¶¶ 120-123.); a request for injunctive relief (*Id.* at ¶¶ 124-126.); for an equitable accounting of all payments, renumeration or other value provided to K-Fab and of the monetary benefits conferred on Marty  (*Id.* at ¶¶ 127-129.); and a request for the appointment of a receiver or custodian for K-Fab  (*Id.* at ¶¶ 130-142.).  Following the filing of the complaint, Plaintiffs also filed a Motion for Appointment of Receiver, or in the Alternative, Appointment of Custodian (Doc. 7) and a Petition to Enforce Settlement Agreement. (Doc. 9) Defendants have not responded to those motions.  Instead, Marty filed a Motion to Dismiss and Compel Arbitration (Doc. 14) and a brief in support (Doc. 18). Plaintiffs filed a brief in opposition to Defendants' motion (Doc. 21) and Defendants filed a reply (Doc. 23).

## II. Discussion

Because the disposition of the motion to dismiss and compel arbitration provides the posture of the case going forward, I will address this motion first. Because I find that the matter cannot properly be decided based on the current evidentiary record, I will deny the motion without prejudice.

### A.     Motion to Dismiss and Compel Arbitration[3]

In response to Plaintiffs' complaint, Marty filed a motion to dismiss the complaint and to compel arbitration of the parties' dispute. (Doc. 14) Defendant K-Fab joins and concurs in the motion. (*Id.* at 1.)[4]

Defendants seeks dismissal or stay Plaintiffs' complaint and "compel arbitration pursuant to and in accordance with the Federal Arbitration Act, 9 U.S.C. §§ 1 *et. seq.* and the Pennsylvania Uniform Arbitration Act, 42 Pa. C.S. §§ 7301 *et. seq.*" (*Id.*) This request is based on Defendants' position that the Loan Agreement that Plaintiffs set forth as one of the parties' pertinent controlling documents, but not attached to any of Plaintiffs' filings, contains a binding  arbitration provision. (Doc. 14, ¶¶ 8-10.) Defendants further request  an enlargement of time to allow Marty and K-Fab to "move to dismiss or otherwise respond to certain counts in the Complaint to the extent, if any, that this Court makes the determination that one or more counts by one or both of the Plaintiffs may proceed in this Court." (*Id.* at ¶ 22.)

Plaintiffs oppose Defendants request and assert five grounds in opposition: first, that Plaintiffs are entitled to pre-arbitration discovery on the question of arbitrability;  second, that Patriot Metal cannot be compelled to arbitrate its claims; third, Defendants admitted that Duane's claims in Counts I-III are not arbitrable; fourth, that "Defendants are judicially barred from disavowing their prior admission that Marty's conduct in refusing to abide by a

---

3

Marty asserts that K-Fab has not been properly served in this action. (*See* Doc. 18, 1 n.1.) Plaintiffs counter that K-Fab was properly served, because Marty was served and service on an officer of a corporation is deemed to be service on the corporation. (Doc. 16, 2 n.1.) However, Marty states that he was served with the summons and complaint addressed to him individually but was not served with the summons and complaint addressed to K-Fab, Inc. (Doc. 18, 1 n.1.)

4

Within this memorandum, citations to page numbers are to the pagination assigned by the electronic case filing system, without regard to the parties' assigned page numbers.

binding settlement agreement was not based upon the terms of the Loan Agreement"; and fifth, that a stay of the non-arbitrable claims is not warranted under Third Circuit precedent. (Doc. 21, 6-7.)

### 1. Legal Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides a "body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes" and expresses a "strong federal policy in favor of resolving disputes through arbitration." *Golden Gate Nat'l Senior Care, LLC v. Sulpizio*, 2016 WL 1271333, at *2 (M.D. Pa. Mar. 31, 2016) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 522 (3d Cir. 2009)).[5] But, arbitration is still "strictly a matter of contract," so "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). It follows that, "in deciding whether a party may be compelled to arbitrate under the FAA," consideration is first given to "'(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" *Sulpizio*, 2016 WL 1271333, at *2 (citing *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)) (citations omitted).

"Questions concerning the interpretation and construction of arbitration agreements

---

[5]

The arbitration agreement states that "[t]he parties shall submit any dispute arising under this Agreement to binding arbitration under the Pennsylvania Uniform Arbitration Act ["PUAA"]", (Doc. 14-2, 4 ¶ 13.), however, Defendants assert that K-Fab is involved in interstate commerce as defined by Section 1 of the FAA and Plaintiffs do not dispute such. (Doc. 18, 6.); *see* 9 U.S.C. § 1. Federal courts apply the FAA to assess arbitration agreements where the parties' relationship is one of interstate commerce. *See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 288 (3d Cir.2010), as amended (Dec. 7, 2010); *see also State Farm Mut. Auto. Ins. Co. v. Coviello*, 233 F.3d 710, 713 n. 1 (3d Cir.2000); *H.L. Libby Corp. v. Skelly & Loy, Inc.*, 910 F. Supp. 195, 197 (M.D. Pa. 1995).

are determined by reference to federal substantive law." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (citations omitted). "In interpreting such agreements, federal courts may apply state law, pursuant to section two[6] of the FAA" and "generally applicable contract defenses may be applied to invalidate arbitration agreements without contravening the FAA." *Harris*, 183 F.3d at 179 (citing *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *Perry v. Thomas,* 482 U.S. 483, 492, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)).

The Third Circuit clarified the standard of review applicable to motions to compel arbitration in *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013). "[W]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or. . . documents relied upon in the complaint)', 'the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery.'" *Guidotti*, 716 F.3d at 773-74 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 479, 482 (E.D. Pa. 2011)) (internal citation omitted).

However, review under the Rule 12(b)(6) standard is inappropriate "when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate," *Guidotti*, 716 F.3d at 774 (quoting *Somerset*, 832 F. Supp. 2d at 482), "or the opposing party has come forth with reliable evidence that is more than a 'naked assertion that it did not intend to be bound' by

---

[6] A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2.

the arbitration agreement, even though on the face of the pleadings it appears that it did."
*Guidotti*, 716 F.3d at 774  (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636
F.2d 51, 55 (3d Cir. 1980)). "Under the first scenario, arbitrability not being apparent on the
face of the complaint, the motion to compel arbitration must be denied pending further
development of the factual record." *Id*.  In comparison, when the complaint and documents
incorporated therein "facially establish arbitrability but the non-movant" comes forward with
sufficient evidence in opposition to the motion to compel to place the question of arbitrability
at issue the case falls under the second scenario.  *Id*.  Under both of these scenarios, the
motion to compel is to be judged under the Rule 56 standard. *See id*. A "restricted inquiry
into factual issues [is] necessary to properly evaluate whether there was a meeting of the
minds on the agreement to arbitrate," and the non-movant "must be given the opportunity
to conduct limited discovery on the narrow issue concerning the validity of the arbitration
agreement." *Id*. at 774-75 (citations and quotations omitted).

> In short:

> when it is apparent, based on the face of a complaint, and documents relied
> upon in the complaint, that certain of a party's claims are subject to an
> enforceable arbitration clause, a motion to compel arbitration should be
> considered under a Rule 12(b)(6) standard without discovery's delay.But if the
> complaint and its supporting documents are unclear regarding the agreement
> to arbitrate, or if the plaintiff has responded to a motion to compel arbitration
> with additional facts sufficient to place the agreement to arbitrate in issue, then
> the parties should be entitled to discovery on the question of arbitrability before
> a court entertains further briefing on [the] question. After limited discovery, the
> court may entertain a renewed motion to compel arbitration, this time judging
> the motion under a summary judgment standard. . . .

*Id*. at 776 (internal quotations and citations omitted).

### 2.    Analysis

#### a.    Counts IV, V, VI, VIII, IX, X, XI

Plaintiffs' complaint references and seeks to enforce provisions of the Loan

Agreement.[7] Contained within the Loan Agreement is the following language:

> The parties shall submit any dispute arising under this Agreement to binding arbitration under the Pennsylvania Uniform Arbitration Act. Such disputes shall include, but not be limited to, those concerning: (a) the interpretation of this Agreement; (b) the obligations and responsibilities of a party arising under this Agreement; and, (c) the failure of a party to perform any obligation or responsibility hereunder. Without limitation upon the scope of authority granted hereunder to the arbitrator in any proceeding initiated pursuant hereto, the parties specifically agree that an award or decision of the arbitrator hereunder may render an interpretation of this Agreement, award monetary damages, and/or direct a party to take actions in compliance with the provisions hereof or any decision of the arbitrator. . .

> **A. Method to Initiate:** Any party, (the "Requesting Party") desiring arbitration shall give written notice of such request to the other party, (the "Receiving Party") such notice to specify the matter to be arbitrated. The Requesting Party shall also provide a copy of that notice, along with a copy of this Agreement and the names and addresses of the Receiving Party, to the then current President of the Columbia-Montour County Bar Association. The President of the Columbia-Montour County Bar Association shall then appoint an attorney admitted to practice in Pennsylvania as arbitrator; provided, however, that, if the President of the Columbia-Montour County Bar Association shall be counsel to a party, such appointment shall be made by an officer of the Columbia-Montour County Bar Association not having a conflict in the following order of priority: Vice-President, Treasurer, Secretary. The attorney appointed as arbitrator shall have no attorney-client or other relationship with a party that would impair the attorney's ability to be fair and impartial. If, for any reason, there shall be a failure to secure the appointment of an arbitrator using the method provided hereunder, any party may petition the Court of Common Pleas of Columbia County to secure the appointment of such arbitrator.

> **B. Method of Arbitration:** The arbitrator so appointed shall thereupon conduct an arbitration hearing at a location in Columbia County, Pennsylvania, and shall render a decision within sixty (60) days of the arbitrator's appointment. The decision of the arbitrator shall be final and binding, unless a party is denied a hearing or in the event that fraud, misconduct, corruption or other irregularity causes the rendition of an unjust, inequitable, or unconscionable award or decision. The costs and expenses

---

[7]     Despite Plaintiffs' failure to attach the Loan Agreement to the complaint, consideration of Paragraph 13 of the Loan Agreement is proper because several of the claims rely on the enforceability of the Loan Agreement and Plaintiffs' do not dispute its authenticity. *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 560 (3d Cir. 2002) ("documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court.")

> of the arbitration shall be paid by the parties in accordance with the decision of the arbitrator. The arbitrator may award a prevailing party the costs and expenses, including reasonable attorney fees, incurred by such party in the arbitration proceeding.

(Doc. 14-2, 4-5, ¶ 13.) Based on this language, Defendants request that I dismiss or stay the case and order that the parties submit their disputes to arbitration. Plaintiffs oppose the request. Duane asserts that the arbitration agreement is unenforceable against him. Duane does not, however, contest the validity of the Loan Agreement, because arguably, he cannot. (*See* Doc. 21, 10-11 n. 3.) As stated above, some of Duane's claims directly assert the Loan Agreement's enforceability by requesting relief based on Marty's alleged breaches of the Loan Agreement. (*See Compl.,* Counts IV, V, VI, VIII, IX, X, XI.).  Also, Duane does not question or challenge the authenticity of the Loan Agreement or the arbitration agreement; his contention is that, despite the existence of the arbitration agreement, the agreement is unenforceable against him because it is unconscionable. *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 180  n. 4 (3d Cir. 2010)(citing *Jackson v. Rent-A-Center West, Inc.,* 581 F.3d 912, 915 (9th Cir.2009)).

Courts unanimously recognize that "an unconscionability challenge to the provisions of an arbitration agreement is a question of arbitrability that is presumptively for the court, not the arbitrator, to decide." *Puleo*, 605 F.3d at 180. Therefore, a necessary precondition to consideration of such a challenge is a determination of the applicable standard of review. As noted above, the Third Circuit prescribes that a motion to compel arbitration should not be decided under a 12(b)(6) standard when a court is presented with a complaint and its supporting documents that do not clearly evidence the parties' agreement to arbitrate; or, "when there is a clear agreement to arbitrate, but the party opposing arbitration has come

forward with enough evidence in response to the motion to compel arbitration to place the question in issue." *Guidotti*, 716 F.3d at 774. When a party asserts unconscionability, and, "any time the court must make a finding to determine arbitrability, pre-arbitration discovery may be warranted." *Id*.3d at 774 n. 5 (citing *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 112 (3d Cir.2000))**.**

No one contests that the arbitration agreement was contained in the Loan Agreement, nor that the Loan Agreement is authentic. The question to be answered is whether Duane has come "forward with sufficient evidence in opposition to the motion to compel to place the question of arbitrability at issue." *Id*. at 774. If so, the parties may be entitled to pre-arbitration discovery.

The party asserting that the agreement is unenforceable due to unconscionability has "[t]he burden of proving a generally applicable contract defense." *Lloyd v. HOVENSA, LLC.,* 369 F.3d 263, 274 (3d Cir.2004); *see also Sulpizio*, 2016 WL 1271333, at *4 (citing *Salley* v. *Option One Mort. Corp.*, 925 A.2d 115, 129 (Pa. 2007).). "To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally unconscionable." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (citing *Salley*, 925 A.2d at 119). "In discussing the two prongs of unconscionability, the Pennsylvania Supreme Court indicated that it may be appropriate to use a 'sliding-scale approach' such that where the unconscionability is very high with regard to one prong, a lesser degree of unconscionability may be required on the other prong." *Sulpizio*, 2016 WL 1271333, at *4 (citing *Salley*, 925 A.2d at 125 & n.12.)

"A contract or provision is substantively unconscionable where it 'unreasonably favors the party asserting it,'" or, in other words, when the agreement has "contractual terms that

are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Quilloin*, 673 F.3d at 230 (citing *Salley,* 925 A.2d at 119; *Harris,* 183 F.3d at 181; *Germantown Mfg. Co. v. Rawlinson*, 341 Pa.Super. 42, 491 A.2d 138, 145–47 (1985); *Denlinger, Inc. v. Dendler*, 415 Pa.Super. 164, 608 A.2d 1061, 1068 (1992)). However, "[a]n arbitration agreement cannot be substantively unconscionable if it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum. . .'" *Williams v. Nabors Drilling USA, LP*, 2014 WL 710078, at *4 (W.D. Pa. Feb. 25, 2014)(citing *Edwards v. HOVE NSA, LLC,* 497 F.3d 355, 364 (3d Cir.2007)).

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of [the] agreement, including the use therein of fine print and convoluted or unclear language." *Sulpizio*, 2016 WL 1271333, at *6 (citing *Harris,* 183 F.3d at 181 (applying Pennsylvania law)). "In analyzing whether a contract rises to the level of procedural unconscionability, [courts] consider[ ] several factors: 'the take-it-or-leave-it nature of the standardized form of the document[,]' 'the parties' relative bargaining positions,' and 'the degree of economic compulsion motivating the 'adhering' party[.]'" *Sulpizio*, 2016 WL 1271333, at *6 (citations omitted).

In sum, "unconscionability 'requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.'" *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265-66 (3d Cir. 2003) (citing *Harris ,*183 F.3d at 181; *Bensalem Township v. Int'l Surplus Lines Ins. Co.,* 38 F.3d 1303, 1312 (3d Cir.1994)) (citations omitted).

14

Plaintiffs assert the arbitration agreement is substantively unconscionable based on the following: (1) the arbitrator's decision must be made within sixty (60) days of appointment, thereby "prohibiting the parties from conducting meaningful discovery"; (2) judicial review of the arbitrator's award is severely restricted; (3) "the arbitrator has complete discretion to award costs and fees regardless of the outcome of arbitration"; and (4) the President of the Columbia-Montour County Bar Association is to select the arbitrator and the only prohibition against his or her selection of the arbitrator would be if he or she were counsel to either of the parties; other affiliation or relationship with a party is not addressed. (Doc. 21, 12-13.) Plaintiffs assert that the arbitration provision is procedurally unconscionable because "an absence of meaningful choice" existed on Duane's[8] part because Duane was "compelled by his father (and his father's long-time attorney that drafted the loan agreement) to agree to the arbitration provision without any legitimate opportunity to negotiate its terms." (*Id.* at 11.) Plaintiffs also contend that "Duane was in a substantially compromised bargaining position in light of his father's status as the majority shareholder in K-Fab and Duane's status as a minority shareholder", meaning  Duane was "compelled to accept the arbitration agreement as written in order to ensure the continued operation of K-Fab under his ownership." (*Id.* at 11-12.) Plaintiffs further assert that the arbitration was an adhesion contract and was, therefore, *per se* unreasonable. (*Id.* at 12.)

In light of these assertions, Plaintiffs argue that the matter cannot be decided until the parties have an opportunity to conduct discovery on the issue of arbitrability because

---

[8]

Plaintiffs submitted an affidavit of Duane in conjunction with the brief in opposition to the motion to compel arbitration. The affidavit will not be considered because such is not appropriately considered when employing a 12(b)(6) standard of review. (*See* Doc. 21-2.)

"Duane has come forth with reliable evidence regarding the unconscionablity of [the arbitration agreement]." (Doc. 21, 10.) Defendants state that application of a Rule 12(b)(6) standard is appropriate and no discovery is required to analyze the current motion because Duane has put forth nothing "more than a naked assertion" that he did not intend to be bound by the arbitration agreement. (Doc. 23, 4.) Defendants contend that Duane's averments that his father had an advantage in bargaining power and that he was compelled to enter the agreement to arbitrate to ensure continued operation of K-Fab are contradicted by the factual background recited in the complaint; Duane's complaint alleges that Marty turned over operations of K-Fab to Duane in 2008 and that Marty ceased his involvement in K-Fab and moved to Reno, Nevada in December 2012. (Doc. 23, 5.)Therefore, Duane "alone possessed the ability to continue the business operations of K-Fab." (*Id.*) Defendants also argue that the arbitration agreement is not a contract of adhesion as Plaintiffs suggest but is written in an even-handed manner and "provides for the fair and cost-effective arbitration" of disputes. (Doc. 23, 7.)[9]

---

[9]
Defendants also call attention to the following recitation in the Loan Agreement:

> 10.    The parties have requested Elwood R. Harding, Jr.. Esquire, to act as legal counsel for the purposes of preparation of this Agreement. Each party acknowledges that he or she has the right to secure independent legal counsel prior to entering into this Agreement. Each party acknowledges that they have been advised that, if a conflict of interest arises between the parties, or if there a [sic] difference of opinion, as joint legal counsel, Elwood R. Harding, Jr., is able to point out the pros and cons of the parties' respective positions or differing opinions. However, ethical considerations prohibit Elwood R. Harding, Jr., as a lawyer for multiple parties, from advocating one party's positions over the other. Furthermore, Elwood R. Harding, Jr., would not be able to advocate one of the party's positions over the others if there is a dispute at any time regarding the party's property rights or interests or as to other legal issues between the parties. If actual conflicts of interest do arise between the parties, that, in the opinion of joint legal counsel, would make it impossible to perform counsel's ethical obligations, Elwood R. Harding, Jr., would have to withdraw

Although some courts within this district have assessed motions to compel under a 12(b)(6) standard when an unconscionability defense was raised, *See Glover ex rel. Glover v. Darway Elder Care Rehab. Ctr.*, 2014 WL 931459, at *4 (M.D. Pa. Feb. 4, 2014) (M. J. Carlson), report and recommendation adopted, 2014 WL 931470 (M.D. Pa. Mar. 10, 2014) (J. Brann)(Where the court found the arbitration agreement contained language stating its voluntary nature, that acceptance was not a precondition to admission to the health care facility, and the agreement was relatively balanced.)*, others have ordered limited discovery to assess the opposition to a motion to compel with a more fully formed record. *See Sulpizio,* 2015 WL 4878348, at *4 (J. Kane) ("While the question of whether the contract defense of unconscionability will ultimately suffice to defeat Petitioners' *prima facie* evidence of an agreement to arbitrate remains entirely open, the Court will allow for a period of pre-arbitration discovery, after which point the Court will consider a motion to compel arbitration on a Rule 56 standard."); *GGNSC Camp Hill W. Shore, LP v. Thompson ex rel. Mullen*, No. 1:15-CV-445, 2015 WL 1932330, at *7 n. 6 (M.D. Pa. Apr. 28, 2015) (J. Conner) (ordering limited discovery because the issues pertaining to "contract defenses [were] not apparent from the four corners of the ADR Agreement."); *Caparra v. Maggiano's Inc.*, 2015 WL 5144030, at *2 (E.D. Pa. Sept. 1, 2015) (Unable to rule on Defendants' motion in the absence of a fuller evidentiary record, the court denied the motion without prejudice and

---

as joint lawyer and each party will need to seek separate representation. (Doc. 23, 5-6; Doc. 14- 2, 4, ¶ 10.) This provision, according to Defendants, evidences a lack of support for Duane's "newly found 'unconscionability' argument." (Doc. 23, 6.) However, the arbitration agreement is contained in Paragraph 13 and therefore, Paragraph 10 is not a part of the arbitration agreement that is the subject of the current challenge.

ordered the parties to conduct discovery into Plaintiff's unconscionability arguments.); *Herzfeld v. 1416 Chancellor, Inc*., 2015 WL 4480829, at *1 (E.D. Pa. July 22, 2015); *Porreca v. Rose Grp.*, 2013 WL 6498392, at *7 (E.D. Pa. Dec. 11, 2013)("Because the Complaint did not make clear that the parties' dispute was subject to arbitration and Plaintiffs put forth evidence suggesting that the agreement to arbitrate was unconscionable, the Court ordered limited discovery on the issue of arbitrability.").

A brief review of the grounds raised by Duane demonstrates that limited discovery should be allowed to develop the evidentiary record on some of his allegations. With regard to substantive unconscionability, Duane's argument that discovery will be significantly curtailed, if not eliminated, may serve as a basis for a finding of substantive unconscionability. Also, "an arbitration agreement is unconscionable if it 'makes the arbitral forum prohibitively expensive for the weaker party....'"*Golden Gate Nat'l Senior Care, LLC v. Beavens*, 123 F. Supp. 3d 619, 631 (E.D. Pa. 2015)(citing *Parilla v. IAP Worldwide Servs., VI, Inc.,* 368 F.3d 269, 284 (3d Cir.2004); *Alexander* 341 F.3d at 269–70), but "[t]he party opposing arbitration bears the burden of establishing the costs of arbitration and the party's inability to pay those costs," *Antkowiak v. TaxMasters,* 455 Fed.Appx. 156, 160 (3d Cir.2011) (citing *Parilla,* 368 F.3d at 283–85)), and is "typically entitled to limited discovery on the issue." *Beavens*, 123 F. Supp. 3d at 63 (citing *Parilla,* 368 F.3d at 284) (citations omitted.)

Although limited discovery will be allowed based on Duane's allegations addressed in the preceding paragraph, Duane's claims that judicial review is significantly limited by the agreement and that the only qualifier on selection of an arbitrator is limited to a prohibition against selection by a party's counsel, are belied by the language of the agreement itself.

18

There are several grounds stated in the agreement upon which a party can seek to invalidate an arbitral award. (*See* Doc. 14-2, ¶ 13 ("The decision of the arbitrator shall be final and binding, unless a party is denied a hearing or in the event that fraud, misconduct, corruption or other irregularity causes the rendition of an unjust, inequitable, or unconscionable award or decision.')) Additionally, there are several more qualifiers listed with regard to selection of an appropriate arbitrator. (*See Id.* ("provided, however, that, if the President of the Columbia-Montour County Bar Association shall be counsel to a party, such appointment shall be made by an officer of the Columbia-Montour County Bar Association not having a conflict in the following order of priority: Vice-President, Treasurer, Secretary. The attorney appointed as arbitrator shall have no attorney-client or other relationship with a party that would impair the attorney's ability to be fair and impartial.") These contentions do not demonstrate substantive unconscionability.

Turning to procedural unconscionabilty, Duane asserts, specifically, that the arbitration agreement, drafted by his father's attorney, was not open to negotiation, thereby, amounting to a contract of adhesion. (Doc. 21, 11-12.) He also asserts that there was a disparity in bargaining power while concerns existed over the continued operations of K-Fab. (*Id.*) It is true that "more than a disparity in bargaining power is needed in order to show that an arbitration agreement was not entered into willingly," *Quilloin*, 673 F.3d at 235 (citing *Great W. Mortg. Corp. v. Peacock,* 110 F.3d 222, 229 (3d Cir.1997)), however, because Duane's assertions must be believed at this juncture, review under a Rule 12(b)(6) standard of review is not appropriate.

The parties will be permitted to engage in limited arbitration related discovery with regard to the grounds raised by Duane. Defendants' motion to compel arbitration will be

denied without prejudice and Defendants can renew their request; subject to a Rule 56 standard of review.

### b.    Patriot Metal Products

Patriot Metal was not a party to the Loan Agreement or the arbitration agreement. (Doc. 18, 10; Doc. 14-2.)  However, Defendants ask that, pursuant to Section 3[10] of the FAA, 9 U.S.C.A. § 3, and the Pennsylvania Uniform Arbitration Act, 42 Pa. C.S. § 7304(d)[11], I dismiss or stay Patriot Metal's claims against Marty pending arbitration of the Duane's claims. (Doc. 14, ¶¶14-21; Doc. 18, 8-12.)  Defendants assert that Patriot Metal's "claims are duplicative of Duane's claims, and allowing those claims to continue would cause "the arbitration process [to] be adversely impacted."[12] (Doc. 18, 10)  Plaintiffs oppose the

---

[10]

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
9 U.S.C.A. § 3.

[11]

**(d) Stay of judicial proceedings.--**An action or proceeding, allegedly involving an issue subject to arbitration, shall be stayed if a court order to proceed with arbitration has been made or an application for such an order has been made under this section. If the issue allegedly subject to arbitration is severable, the stay of the court action or proceeding may be made with respect to the severable issue only. If the application for an order to proceed with arbitration is made in such action or proceeding and is granted, the court order to proceed with arbitration shall include a stay of the action or proceeding.
42 Pa.C. S. § 7304.

[12]

Without moving for 12(b)(6) dismissal at this time, Defendants assert that Patriot Metal and Duane's claims in Counts I-III fail to state a claim upon which relief can be granted. However, Defendants motion does not request that the claims be dismissed for failure to state a claim but rather states:

"this Court must note that Plaintiffs' claims under the Computer Fraud and

Defendants' motion and argue that Patriot Metal, as a non-signatory, cannot be compelled to arbitrate its claims. (Doc. 21, 14-16. ) It does not appear that Defendants are seeking to compel Patriot Metal to arbitrate its claims, but instead are seeking a dismissal or a stay of the proceedings pending arbitration, if such is ordered. Therefore, there is no need for me to address Plaintiffs' arguments that a non-signatory cannot be compelled to arbitrate its claims. I will also not, at this time, address Defendants' request to dismiss or stay the proceedings based on the denial, without prejudice, of the motion to compel arbitration. Deciding this request prior to a determination of whether or not the parties have arbitrable claims is not prudent. The motion to dismiss or stay will also be denied.

### c.    Counts I-III

Plaintiffs also argue that Marty has repeatedly acknowledged that Counts I-III of the Complaint are not expressly based on the loan agreement, but Defendants still contend that "Duane should be barred from litigating those claims in court because the parties may incur additional costs." (Doc. 21, 16.) Plaintiffs again assert that these claims should not be included in any potential arbitration. (*Id.* at 17.) However, as indicated in the preceding section, Defendants seek to dismiss or stay all claims deemed non-arbitrable. For the reasons stated above, I will deny any request to dismiss or stay the proceedings or any claims at this time.

---

Abuse Act and Counts II and III were based solely 'upon information and belief' allegations–despite the fact that Plaintiffs should possess some substantive facts to support their claims of 'hacking' and 'illegal access' . . . .Plaintiffs failed to plead sufficient facts to support their non-arbitrable claims." (Doc. 18, 11.) Plaintiffs argue that Defendants misrepresent the pleadings, and contrary to Defendants' assertions, the claims "have been pled in detail." (Doc. 21, 15.) A Rule 12(b)(6) motion is not before me and therefore, I will not address these arguments further.

d.      **Count VII**

Plaintiffs argue that Defendants should be barred by the doctrines of judicial admission and judicial estoppel from "disavowing their prior concession and taking an irreconcilable position" from previous admissions "that Duane's breach of settlement agreement claim in Count VII of the complaint is non-arbitrable." (Doc. 21, 17.) Plaintiffs cite the following statement contained in Defendants' motion: "Numerous purported causes of action asserted by Plaintiffs are either expressly based upon the Loan Agreement and are substantially intertwined with Martin Koch's actions based upon the terms thereof. See Complaint, Counts IV, V, IV, VIII, IX, X, XI". (*Id*. (citing Doc. 14, ¶ 13.) (emphasis in original).)Plaintiffs contend that omitting Count VII is an admission by Defendants that Marty's conduct relevant to the settlement agreement was not based on any rights under the loan agreement, therefore rendering the breach of settlement agreement claim non-arbitrable". (*Id*.)[13]Defendants contend that the language cited by Plaintiffs should not be viewed in a vacuum but, rather, effect should be given to the following language at the end of Defendants' motion:

> for all or any of the foregoing reasons, and for the reasons to be more fully set forth in the supporting brief to be filed in accordance with the Local Rules, Defendant Martin Koch respectfully requests this Court to dismiss or stay this litigation in its entirety, to compel the arbitration of the parties' disputes in accordance with their written agreement, and for such other and further relief as this Court deems just and proper."

(Doc. 23, 1 (emphasis in original).) Defendants argue that Plaintiffs' limited view of the motion to compel arbitration is part of "their [sic] efforts to justify their refusal to proceed to

---

[13]      The claim for breach of settlement agreement is Count VII of the complaint. (Doc.1)

arbitration." (*Id.* at 1.)

"[T]he doctrine of judicial admissions binds a party who makes factually-based concessions in pleadings, briefs or other documents filed during the course of litigation." *Koger v. Robert Half Int'l*, 2007 WL 712225, at *7 (W.D. Pa. Mar. 7, 2007), aff'd, 247 F. App'x 349 (3d Cir. 2007)(citing *Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195, 211 n. 20 (3d Cir.2006); *Parilla*, 368 F.3d 269, 275 (3d Cir.2004)). "To be binding, judicial admissions must be unequivocal," and "arise from deliberate, clear and unequivocal statements made by a party." *Koger*, 2007 WL 712225, at *8 (citations omitted). "Mere contentions and argument . . . do not rise to the level of judicial admissions." *Koger*, 2007 WL 712225, at *8 (citing *Saudi v. Acomarit Maritime Services, S.A.*, 245 F. Supp.2d 662, 680 (E.D.Pa.2003)) (employing judicial admission to prevent a plaintiff from attempting to assert a contradictory factual averment when motions were repeatedly filed premised on the original factual averment).

"Judicial estoppel, sometimes called the 'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding" and is "designed to prevent litigants from "playing 'fast and loose with the courts.'" *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (citing *Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir.1953)). In order for judicial estoppel to apply, the following three requirements must be met:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith—i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser

sanction would adequately remedy the damage done by the litigant's misconduct.

*Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*, 553 F. App'x 246, 250 (3d Cir. 2014) (citing *Krystal Cadillac-Oldsmobile GMC Truck, Inc. V. General Motors Corp.,* 337 F.3d 314, 319–20(3d Cir. 2003)).

Plaintiffs contend Defendants' prior admission that "Marty's actions in breach the [sic] settlement agreement were not substantially intertwined or based upon the loan agreement" is binding. (Doc. 21, 19.) The statement cited by Plaintiffs is not a judicial admission. Not including a claim in the statement is not an affirmative statement of a factual matter. With regard to Count VII, Paragraph 13 is not a "deliberate, clear [or] unequivocal statement" regarding Plaintiffs' claim for breach of settlement agreement.

With regard to judicial estoppel, Plaintiffs argue that a comparison of Defendants' filings evidences "irreconcilably inconsistent" positions. Plaintiffs cite to the following in Defendants' motion:

> With respect to Count VII alleging breach of a purported settlement agreement, the exhibits filed by Plaintiffs in support of that claim demonstrate the fallacies and weaknesses thereof. See Docket Entry 10 filed January 27, 2016. Notably, however, the allegedly wrongful conduct of Martin Koch that breached the alleged settlement was his exercise of the rights and remedies available to him under the written Loan Agreement, associated documents, and applicable law. The validity of Martin Koch's actions will be determined by an assessment of those rights and remedies derived from those written agreements.

(Doc. 18, 4.)(emphasis in original), and contend that this language is irreconcilably inconsistent with Paragraph 13, cited above, and should "prevent defendants from disavowing their prior position that the breach of the settlement claim was not arbitrable." (Doc. 21, 19.) Plaintiffs also contend that these statements were made in bad faith and are

a change in position reflecting an "intent to play 'fast and loose' with this Court" in an attempt "to gain an unfair advantage by seeking to divest this Court of jurisdiction over a claim which Defendants previously conceded this Court has authority to adjudicate." (*Id.* at 20.) Finally, Plaintiffs argue that a "'miscarriage of justice' would result if Duane is compelled to arbitrate a claim that Defendants admitted is non-arbitrable."(*Id.*)

In *Haines & Kibblehouse*, the Third Circuit affirmed the dismissal of a complaint based on judicial estoppel when the plaintiff first "emphatically argued . . .that it would 'never be able to refile its complaint,' but then—after [the appeal] languished on [the] docket for more than a year and the parties engaged in a prolonged mediation process— [plaintiff] proceeded to file a new (and nearly identical) complaint in the Montgomery County Court of Common Pleas." 553 F. App'x at  250. The court found evidence of bad faith because of extended delays and intentional stalling on the plaintiff's part, while the plaintiff possessed full knowledge of the inconsistent grounds upon which the appeal would later be withdrawn and a new complaint would be filed. *Id.* at 250-51.

There is no evidence of record of bad faith or even that Defendants have changed positions and therefore, judicial estoppel also does not apply. Again, Defendants do not request that I compel arbitration on the claims that are non-arbitrable, but seek dismissal or stay, in the alternative, of the claims that are not subject to the arbitration agreement if such is deemed enforceable. Therefore, it is unnecessary to further address Plaintiffs' argument that Defendants are now prohibited from asserting that Count VII is non-arbitrable based either the doctrine of judicial admissions or judicial estoppel.

   **e.**   **Stay**

Plaintiffs finally contend in opposition to the motion to compel arbitration that a stay

of any claims deemed non-arbitrable, or outside the scope of an otherwise valid arbitration agreement, is not mandated under Third Circuit precedent. (Doc. 21, 23-25.) Defendants request that all claims be dismissed or stayed pending arbitration because allowing the claims not expressly based on the Loan Agreement (Counts I-III) to be litigated "will cause the parties to incur litigation costs when arbitration over the bulk of Plaintiffs' claims may ultimately resolve all of the parties disputes."[14] Because I will deny without prejudice Defendants' motion to compel arbitration, I will likewise deny the motion to dismiss or stay without prejudice.

## B.    Motion for Leave to Conduct Limited Expedited Discovery

Plaintiff Patriot Metal requests leave to conduct limited expedited discovery pursuant to Federal Rule of Civil Procedure 26(d)(1). (Doc. 16) Patriot Metal seeks the following: (1) permission to depose Marty regarding his alleged access to the computer systems owned by K-Fab and Patriot Metal; (2) permission to subpoena documents from K-Fab, Patriot Metal and Marty's internet service providers related to the access of Patriot Metal's computer/computer systems; and (3) permission to inspect and conduct a forensic analysis of K-Fab's computer system relating to the access of Patriot Metal's computer/computer systems. (Doc. 16, ¶ 16.) Patriot Metal argues its "requests are narrowly tailored and limited to evidence that could either be easily be [sic] destroyed by Defendants or third-parties." (Id. at ¶ 17.)

---

[14]

Defendants also cite to the Pennsylvania Uniform Arbitration Act, 43 Pa. C.S. § 7304(d), in support stating Pennsylvania law provides for a mandatory stay. *See* Note 5 supra.

### 1.   Legal Standard

Federal Rule of Civil Procedure 26(d)(1) provides:

> (d) Timing and Sequence of Discovery. (1) Timing. A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, <u>or by court order</u>.

Fed. R. Civ. Pro. 26 (emphasis added). The Third Circuit has not provided the standard a court is to apply when faced with such a request. Rule 26 and "the Federal Rules of Civil Procedure offer little guidance as to when it is appropriate to authorize expedited and/or early discovery." *Leone v. Towanda Borough*, 2012 WL 1123958, at \*2 (M.D. Pa. Apr. 4, 2012) (citing *Kone Corp. v. ThyssenKrupp USA, Inc.*, 2011 WL 4478477, at \*3 (D.Del. Sept.26, 2011)).

Courts in the Third Circuit, including this court, have applied a "good cause" or reasonableness standard to requests for expedited discovery under Rule 26(d).[15] On ruling on a motion for expedited discovery, the court should consider the 'entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances.'" *Malibu Media LLC*, 2015 WL 3795948, at \*2 (citing *Modern Woman, LLC v. Does I–X,* 2013 WL 888603, \*2 (D.N.J. Feb.27, 2013); *Better Packages, Inc. v. Zheng*, 2006 WL 1373055, \*2 (D.N.J. May 17, 2006)). "Good cause is usually found where the plaintiff's need for

---

[15]

Other courts in the circuit have applied a more stringent standard, similar to the standard for entitlement to a preliminary injunction, *See Gucci Am., Inc. v. Daffy's, Inc.*, 2000 WL 1720738, at \*6 (D.N.J. Nov. 14, 2000), but many courts in the Third Circuit apply a "good cause" or reasonableness standard. The parties do not address the standard to be applied, however, both parties' filings argue whether good cause exists in this case. As I have previously done, I will apply the "good cause" or reasonableness standard to this dispute. *See Leone v. Towanda Borough*, 2012 WL 1123958, at \*2 (M.D. Pa. Apr. 4, 2012)*.*

expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant," *Malibu Media LLC* , 2015 WL 3795948, at \*2(citing *Leone*, 2012 WL 1123958 at \*2; *Fonovisa, Inc. v. Does 1–9*, Civ. No. 07–cv–1515, 2008 WL 919701, \*10 n. 22 (W.D.Pa. Apr.3, 2008) (citing *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D.Cal.2002)), and "has been found where a party seeks a preliminary injunction, where physical evidence may be consumed or destroyed thereby disadvantaging one of the parties, or where the case involves infringement or unfair competition claims." *Leone,* 2012 WL 1123958, at \*2 (citing *Fonovisa, Inc.*, 2008 WL 919701 at \*10 n. 22).

### 2.     Analysis

Plaintiffs' request is premised on their position that the conduct alleged in their filings is grave and therefore, Patriot Metal's request is reasonable under the circumstances. (Doc. 17, 7.) Plaintiffs also assert Patriot Metal's need "outweighs any minimal prejudice or hardship to Marty and K-Fab." (Id.) Plaintiffs argue need based on the following allegations in the complaint:

1.     "Marty unlawfully and improperly removed his son from control of K-Fab after his son paid approximately $ 4.1 million dollars of the agreed upon total buyout price of approximately $ 6 million dollars;

2.     "Prior to removing his son from control of K-Fab, Marty unlawfully hacked into K-Fab's computers/computer systems;

3.     "On or about December 14, 2015 and December 15, 2015, Marty unlawfully hacked into the computer systems of Patriot Metal and illegally illicit [sic] information related to Duane's business, including Patriot Metal's accounting software;

4.     Marty, since unlawfully taking control of K-Fab, has continued to illegally access Patriot Metal's computer systems, subjecting K-Fab (and Marty) to potential criminal charges."

(Doc. 17, 8.) Additionally, Patriot Metal asserts that  Marty and K-Fab will not be prejudiced by a grant of limited expedited discovery because both are represented by counsel and will not suffer any hardship, but that the discovery is required because "the electronic discovery sought by Patriot Metal could be lost or destroyed." (Id. at 8-9.)

Defendants oppose Patriot Metal's request and argue that "Patriot Metal will intrude upon and substantially disrupt the business of K-Fab when inspecting and conducting a forensic analysis of K-Fab's computer system" and the request comprises "virtually all the discovery" Patriot Metal would need to attempt to support its claim. (Doc. 19, 4.) Defendants assert the current case "is not a case involving 'Doe Defendants' where discovery is necessary to identify the potentially culpable parties" and that Patriot Metal does not provide support for its argument that Defendants will destroy any physical evidence with regard to the Computer Fraud and Abuse Act claim. (Id. at 7.) Defendants assert that the "electronic evidence (or lack thereof) will continue to exist despite the passage of time and there is no need to expedite or vary the discovery process." (Id.)[16]

In response, Plaintiffs argue that "[f]ailure to allow Patriot Metal to immediately depose Marty . . . will result in the substantial likelihood that such information will be lost, or, more likely, destroyed by Marty or those acting on his behalf." (Doc. 22, 6.)

Plaintiffs cite to several cases in support of their request and also in responding to Defendants' brief in opposition. (*See* Docs. 16, 22.) In *Wiluna Holdings, LLC v. Does 1-50,*

---

[16]

Defendants also argue that Patriot Metal's motion should be denied because it has failed to state a claim under the Computer Fraud and Abuse Act. (Doc. 19, 5-6.) At this time, Defendants have not filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) with regard to Patriot Metal and therefore, I will not consider this argument.

2013 WL 1336792 (E.D. Pa., April 3, 2013), the plaintiff sought leave to serve a subpoena on Google. The court permitted the request because, without the subpoena, the plaintiff's litigation could not proceed.  *Id.* at *2-3. In *Kone Corp. v. ThyssenKrupp USA, Inc.*, 2011 WL 4478477 (D.Del. Sept.26, 2011), the court permitted some of the requested expedited discovery, in part, because there was an upcoming preliminary injunction hearing, reasoning that limited expedited discovery "may help to clarify and elucidate issues . . .  that will be presented . . .at the upcoming [Preliminary Injunction] hearing." *Id.* at 24. In *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) the court allowed the plaintiff to inspect the defendant's allegedly violative goods before the parties had conferenced because, based on the unique facts of the case,  the goods were "commodities . . .subject to sale, resale, and consumption or use with the passage of time."

Plaintiffs' reply requests relief similar to the relief granted in *Fabreeka Int'l Holdings, Inc. v. Robert Haley, and Armadillo Noise & Vibration LLC*, 2015 WL 5461528, *1 (E.D. Mich. Sept. 15, 2015). (Doc. 22, 10.) In *Fabreeka*, the plaintiff alleged that a former employee "unlawfully accessed its computers to obtain confidential information in violation of the Computer Fraud and Abuse Act," and used the information he purportedly obtained in competition with plaintiff's company.  2015 WL 5461528, at *1. The court allowed a neutral forensic examiner to inspect the defendants' computers to ascertain evidence of the alleged theft. *Id.* at * 4. The court reasoned that there was a possibility that the theft of information could have occurred during employment and in a way that would not necessarily leave any indicia of theft, for example, through the use of a removable data storage device, and therefore, access to the defendants' computers was necessary. *Id.*

Patriot Metal argues that an expedited forensic analysis of K-Fab's computers is

30

warranted in this case because, like the plaintiff in *Fabreeka*, it "cannot fully identify where the unlawful access originated and the scope of that access," and the "temporal proximity between Duane's ouster from K-Fab and the access of Patriot Metal's QuickBooks, both of which occurred on December 14, 2015 within a matter of hours of each other."  (Doc. 22, 10-11.) However, the circumstances of the current case do not warrant the same relief. There has been no allegation that the alleged unlawful access was done in a manner that could conceal the intrusion like in *Fabreeka*. Patriot Metal is aware of access to its software on December 14, 2015. It is unclear how discovery at this time would make this claim more or less plausible.[17] Additionally, as stated, there is no allegation that the information purportedly obtained is being used in a manner detrimental to Patriot Metal; the alleged need surrounds the possibility that evidence necessary to proving its case may be destroyed, however, Patriot Metal has failed to put forth any evidence that destruction is likely to occur.  Defendants have stated that the evidence, to the extent any exists, will remain. Without any concrete evidence of spoilation, I will not speculate that evidence was, or will be destroyed. Additionally, Patriot Metal has not presented convicing evidence of a risk that their cause of action will be lost if their request is denied. Therefore, without a showing of good cause, I see no emergent need to depart from the ordinary discovery process and therefore, Patriot Metal's request for limited expedited discovery will be denied.

### III. Conclusion

For the above stated reasons, I will deny and dismiss Defendants' Motion to Dismiss

---

[17]

Patriot Metal states it would be open to a neutral, jointly selected expert conducting the forensic examination of K-Fab's computers, (*see* Doc. 22, 10 n. 3.) however, I do not agree that a good cause has been demonstrated to warrant such at this point.

and Compel Arbitration, without prejudice. The parties will be given sixty (60) days to conduct limited discovery on the arbitrability issue. Defendants will be permitted to renew their request following the limited discovery period. Patriot Metal Products' Motion for Leave to Conduct Limited, Expedited Discovery will be denied as good cause has not been demonstrated to vary the timing of discovery set forth in the Federal Rules of Civil Procedure.

An appropriate order follows.


  June 3, 2016                                            /s/ A. Richard Caputo
Date                                                   A. Richard Caputo
                                                       United States District Judge